FILED
JUN 11 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MICHAEL M. TINSLEY, )<br>)<br>Defendant. ) | 1:10cr423 (LMB)<br>1:12cv186 (LMB) |

MEMORANDUM OPINION

Michael M. Tinsley ("Tinsley") has filed a timely Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate"). For the reasons discussed below, the Motion will be denied.

I. BACKGROUND

Tinsley was charged with bank fraud and conspiracy to commit bank fraud by a five-count indictment issued on November 4, 2010. He was appointed counsel shortly after his November 2010 arrest, and on December 28, 2010, retained counsel George J. Wooditch, Jr. entered his appearance on Tinsley's behalf.

Tinsley pleaded guilty on January 19, 2011 to a single count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, and the Government moved to dismiss the remaining four counts of the indictment. The more than two-year conspiracy involved a counterfeit check cashing scheme which resulted in tens of thousands of dollars of losses to the victim

banks. On April 1, 2011, Tinsley was sentenced to 70 months imprisonment, the low end of his sentencing guidelines range, five years of supervised release, $181,050.66 in restitution, and a $100 special assessment. He did not appeal his conviction or sentence. In his Motion to Vacate, Tinsley challenges his sentencing guidelines calculations and alleges that his attorney's performance was constitutionally defective.

## II. DISCUSSION

### A. Standard of Review

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under 28 U.S.C. § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result [] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424,

428 (1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991); see also United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998) ("A defendant can raise the claim of ineffective assistance of counsel in three ways: (1) in a motion for a new trial based on anything other than newly discovered evidence; (2) on direct appeal if and only if it conclusively appears from the record that his counsel did not provide effective assistance; or (3) by a collateral challenge pursuant to 28 U.S.C. § 2255.").

B. Tinsley's Claims

Tinsley did not file an appeal in this case and the time to do so has expired; he has therefore procedurally defaulted all of the claims raised in his Motion to Vacate other than his claim for ineffective assistance of counsel.[1] "In order to

---

[1] Pursuant to the terms of the plea agreement, Tinsley expressly "waive[d] the right to appeal the conviction and any sentence within the statutory maximum...(or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever." Plea Agreement ¶ 6. Thus, had Tinsley appealed his sentence, it

3

collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). In his motion, Tinsley provides absolutely no explanation for his failure to appeal, does not make any allegation that a miscarriage of justice would result in the absence of collateral review, and does not claim that he is innocent of the offense of conviction. To the contrary, during the Rule 11 plea hearing, the Court explicitly asked whether Tinsley "claim[ed] in any respect that [he was] innocent of this conspiracy charge," to which Tinsley answered "[n]o, I do not, Your Honor." Plea Tr. at 26:11-13. He also submitted a handwritten letter to the Court before sentencing in which he stated that he "fully and responsibly [sic] accept[s his] guilt." See Dkt. No. 27-1 at 2. Instead, Tinsley challenges only the computation of his sentencing guidelines and his attorney's advice and conduct related to sentencing. Accordingly, because Tinsley has not made the necessary showing of cause and prejudice or miscarriage

---

would most likely have been summarily dismissed by the Fourth Circuit.

4

of justice to excuse his failure to raise any of the pending issues on appeal, all of these claims must be dismissed. Even if Tinsley's claims were not procedurally defaulted, they would be dismissed as meritless.

### 1. Alleged Defects in the Sentence

Tinsley raises three challenges to his sentence. First, he claims that his plea agreement was breached when the Court's guidelines calculation incorporated a loss amount of between $200,000 and $400,000, whereas the loss amount specified in his plea agreement was approximately $181,000. Tinsley mischaracterizes the provisions of his plea agreement. Contrary to his assertion that he only agreed to a loss amount of $181,000, paragraph 5 of the plea agreement states that "the United States and the defendant will recommend to the Court that...the loss amount for the offense is more than $200,000 but less than $400,000, resulting in a 12-level increase to the base offense level." The $200,000 to $400,000 loss amount was then used in the Presentence Investigation Report ("PSR"), to which calculation the defendant did not object, and was subsequently adopted by the Court. Furthermore, even if the Court had used a different loss amount, Tinsley acknowledged both in his plea agreement and orally during his plea colloquy that none of the guidelines factors set out in the plea agreement were binding on the Court in calculating his eventual sentence. See Plea

5

Agreement ¶ 5; Plea Tr. at 12:18-13:19. During the plea colloquy, the Court emphasized that should it sentence Tinsley using different guidelines than those set forth in the plea agreement, he would not have a basis to withdraw his guilty plea, a fact which Tinsley indicated he understood. Plea Tr. at 13:2-7. For these reasons, Tinsley's contention that the Court breached his plea agreement by utilizing the $200,000 to $400,000 loss amount is clearly without merit and will be dismissed.

Tinsley also argues that he should not have received a three-point enhancement for being a manager or supervisor of the enterprise, because the enhancement was a violation of his Sixth Amendment rights and because he was "an equal participant in the conspiracy." Regarding his Sixth Amendment claim, because the sentencing guidelines are advisory rather than mandatory, consideration of the guidelines by a judge at sentencing does not violate the Sixth Amendment. See United States v. Booker, 543 U.S. 220 (2005); see also United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict.").

Before sentencing, Tinsley, through counsel, argued that he was not a manager or supervisor of the conspiracy and should not receive the disputed enhancement. See Objections to Presentence Investigation Report at 1-2 [Dkt. No. 23]. At the sentencing hearing, the Court squarely rejected this argument, relying on an affidavit from FBI Special Agent Mark Stanley. That affidavit recounted that one of Tinsley's co-conspirators identified him as the "number one individual in the organization" and explained that Tinsley distributed fake checks and identification to check cashers. See Stanley Aff. ¶ 4 [Dkt. No. 28-1]. Another co-conspirator stated that Tinsley "recruited individuals to cash counterfeit checks, arranged for the individual's photograph to be taken, and provided the individual with a cellular telephone." Id.

Moreover, Tinsley himself has admitted that he and other conspirators "recruited financial services employees to join the conspiracy...[and] paid the financial services employees to photocopy checks and provide them to members of the conspiracy," and "recruited and directed individuals to cash the counterfeit checks," with reference to specific checks. Statement of Facts ¶¶ 2, 4, 8-9. He has also admitted that the check cashers would retain a portion of the stolen money and return the remainder to Tinsley and his co-conspirators. Id. ¶ 6. Given this evidence,

the imposition of a manager/supervisor role adjustment was fully justified.

Third, Tinsley argues that his criminal history category was over-calculated because some of the listed offenses were related and because they were more than 15 years old.[2] See United States Sentencing Guidelines §§ 4A1.1(a), 4A1.2. He specifically challenges use of three convictions: a September 30, 1985 Baltimore County conviction for Statutory Daytime Housebreaking; a February 4, 1986 Prince George's County conviction for Burglary—Intent/Steal/Night; and a November 19, 1987 Montgomery County conviction for Statutory Daytime Housebreaking. These claims are meritless. The 1985 conviction was not used in the final PSR calculation. See PSR at Worksheet C. The remaining two convictions are unrelated, occurring nine months apart and in two different jurisdictions, and were properly within the allowable 15-year time period. The instant offense of conviction began in April 2004; accordingly, the 15-year period began in April 1989. Regarding the 1986 burglary conviction, in 1992 Tinsley was sentenced to four years of incarceration for violating the terms of the probation imposed

---

[2] Before sentencing, defense counsel successfully objected to the original PSR, which included three points for a conviction predating the 15-year period and double counted two convictions that occurred on the same day. Accordingly, the final PSR subtracted six points from the criminal history calculation. See Objections to Presentence Investigation Report at 2-3.

8

in the 1986 case. That 1992 event was well within the prescribed time period. As to the November 1987 daytime housebreaking conviction, Tinsley was sentenced to 10 years of incarceration with all but 3 suspended. He was released in August 1988 but had returned to prison by February 1990 for a probation violation. Moreover, at the time of sentencing, the Court stated on the record that, because of Tinsley's criminal history, his sentence probably would have been "about the same" regardless of the guidelines calculation. Sentencing Tr. at 13:15-19. For these reasons, Tinsley's challenge to his criminal history calculation is without merit.

### 2. Ineffective Assistance of Counsel

Although not procedurally defaulted, all of Tinsley's ineffective assistance of counsel claims will be dismissed as meritless. First, Tinsley alleges that his counsel promised him that he would receive a maximum sentence of 36 months, "failed to argue against intended loss that was not in [sic] Plea Agreement, failed to investigate the criminal history point calculation, failed to argue or disagree with the Government [sic] evidence of third party hearsay" regarding the leadership role adjustment, and failed to share discovery. Motion to Vacate at 6. He also alleges that counsel coerced him into accepting a plea by using "scare tactics," including advising that, by going to trial, he would face a 30-year sentence and

9

that the Government would not recommend a 3-level reduction unless he promptly pleaded guilty. Tinsley Aff. at 1.

To prove ineffective assistance of his trial counsel, Tinsley must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the defendant. Because Tinsley pled guilty, he must meet a heightened burden of proving prejudice by showing that counsel's performance was objectively deficient and that, because of the deficient performance, "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); see also United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007).

For the reasons discussed above, counsel's failure to argue for a different loss amount or to challenge the criminal history calculation was reasonable, as it was based on a correct reading of the plea agreement and the law. Moreover, advising a client of the pros and cons of accepting a guilty plea versus going to trial—including the potential sentences Tinsley would face under each scenario—constitutes competent representation, not allegedly improper "scare tactics" as Tinsley argues.

Tinsley also contends that counsel should have made a hearsay objection to use of Special Agent Stanley's affidavit at

10

the sentencing hearing. However, neither the general rule against hearsay nor the Confrontation Clause apply at sentencing. See Fed. R. Evid. 1101(d)(3); United States v. Padron-Yanez, 433 F. App'x 189, 190-91 (4th Cir. 2011) (citing United States v. Love, 134 F.3d 595 (4th Cir. 1998) and United States v. Powell, 650 F.3d 388 (4th Cir. 2011)). Accordingly, this claim has no merit.

Tinsley claims that counsel promised him and his fiancée that he would be sentenced to a maximum 36 months imprisonment, approximately half of the sentence he ultimately received. Tinsley's fiancée, Lavonna Wilkinson, contends that "[d]uring one of [her] discussions with Mr. Woodith [sic], he told [her] that Michael Tinsley would get no more than 3 years in prison." Wilkinson Aff. at 1.

This argument is undercut by the sworn affidavit of defense counsel, however, who avers that he never promised or guaranteed Tinsley or his fiancée that the sentence would not exceed 36 months. Specifically, counsel maintains that he "never ha[s], nor will [he] ever promise a defendant a specific sentence and...did not do so in this case." Wooditch Aff. ¶ 5. At most he "may have suggested that [he] would try to get the judge to sentence [Tinsley] to around 36 months," but "never made any guarantees or promises to induce Mr. Tinsley to enter his plea of guilty." Id. ¶ 4.

11

Moreover, the Court clearly instructed Tinsley during his plea colloquy that "if at the sentencing hearing you receive a sentence that is different from what you might be expecting or hoping for based on discussions with counsel, people at the jail, your family members, or just yourself, no matter who has talked with you about a possible punishment you might get in this case, those conversations don't bind the Court, and so if you receive a sentence that is different, as I said, from what you're expecting or hoping for, that, No. 1, is not a violation of the plea agreement; and it would not enable you to withdraw your guilty plea," which Tinsley indicated he understood. Plea Tr. at 13:8-19. Tinsley also confirmed that no one had "put any force or pressure" on him to induce him to plead guilty. Id. at 20:20-22. The Court also explicitly asked whether, aside from the plea agreement, anyone had "promised or suggested to [Tinsley] that by pleading guilty, [he] would get a lighter sentence or more favorable treatment by the Court," to which Tinsley again responded in the negative. Id. at 20:15-19. Finally, Tinsley answered affirmatively that he was "fully satisfied with the way counsel ha[d] represented [him] in this case." Id. at 16:22-24.

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Md., 956

12

F.2d 1290, 1299 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances..., allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.") (quotations omitted). Tinsley's statements during his plea colloquy that he was not pressured into pleading guilty, that no one had made any promises to induce his guilty plea, that he was satisfied with his attorney, and that he understood that no one else's sentencing estimates bound the Court directly contradict the allegations in his current motion. Accordingly, his claim that counsel promised him a particular sentence fails.

And lastly, Tinsley argues that counsel was ineffective for failing to share discovery with him.[3] Tinsley has made no attempt to explain how he was prejudiced by counsel's alleged failure to share discovery material, and in particular that he would not have pled guilty had he been privy to a specific piece of evidence. Accordingly, he does not make out a claim for constitutionally ineffective assistance of counsel under Strickland.

---

[3] Counsel explains that he personally reviewed all of the Government's discovery, some of which (surveillance videotapes) could not be viewed by Tinsley at the jail. Wooditch Aff. ¶ 4.

13

## III. CONCLUSION

For the foregoing reasons, none of the claims raised in Tinsley's Motion to Vacate have any merit, and the Motion will be dismissed by an Order to accompany this Memorandum Opinion.

Entered this 11th day of June, 2012.

Alexandria, Virginia

/s/ *(signature)*
Leonie M. Brinkema
United States District Judge